EQUITABLE LIFE ASSUR. SOC., to Use of REILLY, v. WETHERILL.

(Circuit Court of Appeals, Third Circuit. February 11, 1904.)

No. 32.

1. INSURANCE—REBATES—EXECUTED ILLEGAL CONTRACT—MONEY PAID—PARTIES IN PARI DELICTO.

Where certain life insurance agents made a contract to pay the first premium on a policy for insured, in order to induce him to take the insurance, which agreement was expressly prohibited by Acts Pa. May 7, 1889 (Laws 1889, p. 116), and thereafter such agents paid the premium to the insurance company in the ordinary course of business, the contract thereby became executed, and, the parties being in pari delicto, the court would not aid a recovery thereof from the insured.

2. SAME—SUBROGATION.

Where certain insurance agents made and executed a contract to pay the first premium on an insurance policy issued to defendant, and the policy was thereafter issued by the insurer with an acknowledgment of payment of such premium indorsed thereon, in the absence of evidence that

.the agents were secondarily liable to insurer for such premium an action against insured to recover the same could not be maintained by insurer for the benefit of the agents' receiver on the ground that, as the agents had paid the debt of the insured to insurer, they were subrogated to insurer's right to recover the premium, and were entitled to sue in its name therefor.

. In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

John Ewen, for plaintiff in error.

John G. Johnson, for defendant in error.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

GRAY, Circuit Judge. With this action against Richard Wetherill, another similar action was brought in the court below against one Robert Wetherill. As the facts in each case are the same, by agreement the two actions were tried together, and but one writ of error has been taken.

The actions were brought by one William F. Reilly, in the name of the Equitable Life Assurance Society for the use of the said Reilly, as receiver, to recover the first premium on two policies of life insurance, for $100,000 each, issued to the said defendants. The testimony adduced on the part of the plaintiff disclosed the following state of facts: The firm of Reilly & Sherman was, at the time these policies were issued, general agent for the Equitable Life Assurance Society, the firm at that time being composed of William F. Reilly, George B. Sherman and Edward A. Reilly. The firm has since gone out of business, and William F. Reilly, the equitable plaintiff, has been appointed receiver thereof, and has succeeded to all its rights. In June, 1898, this defendant made application, through Reilly & Sherman, for an insurance policy of $100,000. The negotiations were conducted by Edward A. Reilly, and the policy was thereafter forwarded, through the firm of Reilly & Sherman, with a receipt for the first premium of $4,-457 indorsed upon it, and was thus delivered to the defendant. This first premium was not paid by the defendant, who, having been called as a witness by the plaintiff, and after testifying to that fact, further testified that he (Reilly) agreed to pay the first year's premium, through the firm of Reilly & Sherman:

"Q. And did he tell you he had done so later? A. He told me so later; yes, sir. Q. And the policy was delivered to you in the shape that it is? A. Yes. Q. You paid subsequent premiums on that policy, did you not? A. Two years, yes. Q. And later you delivered the policy to them and took a paid-up policy in return? A. Yes. Q. Has the Equitable ever, during any of that time, claimed any of that premium from you? A. No. The receipt is on that policy. Q. Have they ever claimed it? A. No. There is evidence here that the Equitable received the payment. There is a letter here from them."

Another witness, Alfred W. Main, called by the plaintiff, testified that he was insurance and associate auditor of the Equitable Life Assurance Society, and as such, was in charge of the accounts of the agents; and that in the year 1898, between January and August, Reilly & Sherman were agents of the said society; that he had knowledge of the issuance of the policies to the Wetherills. "Q. As a matter of fact, did

the firm of Reilly & Sherman ever pay the premiums on these two policies to the Equitable, in cash? A. They did." In explanation of this, the witness stated that, in rendering their monthly account, Reilly & Sherman charged themselves with this first premium, among other charges, and settled for the balance due upon that basis. This was admitted by William F. Reilly in his testimony. There is no evidence that the Equitable Life Assurance Society had knowledge of or consented to the bringing of the suit. Reilly & Sherman, in their testimony, said that they had no knowledge of the agreement testified to by Wetherill.

Upon this state of the testimony adduced by the plaintiff, the court below granted a nonsuit, saying:

"The rule in Pennsylvania undoubtedly is, that when there is a suit brought by the legal plaintiff to the use of any person who is the equitable plaintiff, the equitable plaintiff must recover upon the legal title, because that is what he brings into court and is that which he represents. It is very clear to me that there is no legal claim of the Equitable Company against either of these defendants, and for that reason I will have to enter a nonsuit in each case."

The only error assigned is as to the entry of the nonsuit. The plaintiff in error's contentions are:

"(1) That the alleged agreement made with Edward A. Reilly was illegal, and not having been authorized by the members of the firm of Reilly & Sherman, was not binding upon that firm.

"(2) That the firm of Reilly & Sherman, having paid the debt of the defendant to the Equitable Life Assurance Company, became subrogated to the rights of the Equitable Life Assurance Company, both because Reilly & Sherman were also liable at the time of the payment to the Equitable Life Assurance Company, and also because the payment was made in order to protect their interest in the premium."

In support of the first contention, the first section of the act of Assembly of Pennsylvania, of May 7, 1889 (Laws 1889, p. 116), is cited. This section, after prohibiting the making of any distinction or discrimination by insurance companies in favor of individuals, as to the amount or payment of premiums or rates charged, etc., proceeds as follows:

"Nor shall any such company or agent thereof make any contract of insurance or agreement as to such contract, other than as plainly expressed in the policy issued thereon, nor shall any such company or agent pay or allow or offer to pay or allow nor shall any insurant receive directly or indirectly, as inducements to insurance, any rebate of premium payable on the policy."

The second section of the act provided that "any life insurance company, its agent or agents, or any person violating section one of this act shall be guilty of a misdemeanor, and upon conviction thereof, shall be sentenced to pay a fine," etc.

It is claimed by the plaintiff in error, that the contract testified to by Wetherill was in violation of this enactment, and therefore illegal and void. It is sufficient answer to this point to say that the law does not help those, who have made an illegal contract, to recover back the money paid in pursuance thereof, but leaves them where it finds them. The contract was executed. Wetherill was induced to take out the policy and assume responsibility for subsequent premiums, by the undertaking of Reilly & Sherman to pay the first year's premium, which was payable in advance, as a condition precedent to the issuance of the

policy. It appears by the testimony adduced by the use plaintiff, that this advance premium was paid by Reilly & Sherman to the Equitable Society, and that its policy was thereupon issued and delivered, through Reilly & Sherman, to Wetherill. The contract, therefore, was entirely executed. The company had received the premium due to it, and had, as was testified to by plaintiff's own witnesses, no claim against Wetherill. "Where money has been paid upon an illegal contract, it is a general rule that if the contract be executed, and both parties are in pari delicto, neither of them can recover from the other the money so paid." Spring Co. v. Knowlton, 103 U. S. 49, 58, 26 L. Ed. 347; Pollock on Contracts, star p. 332; Leake on Contracts, 774.

The second contention proceeds upon the assumption that Reilly & Sherman had paid the debt of the defendant to the Equitable Life Assurance Society, and therefore became so subrogated to the rights of that society, as to enable it to prosecute in its name a suit against Wetherill, for the premium paid. The case as made by the plaintiff, however, negatives this proposition. The firm of Reilly & Sherman is not in the position of one who, being secondarily liable for a debt, and being obliged to pay the same, claims to have acquired, by way of subrogation, the rights of the creditor against the primary debtor. There is nothing in the case to show that Reilly & Sherman were secondarily liable to the assurance society for this premium. The premium was paid by them in the course of business, and in the ordinary settlement of their accounts with the society. The policy was issued by the society, with an acknowledgment of the first premium upon it. There never was any debt due from Wetherill to the assurance society. The payment made by Reilly & Sherman, of the first premium, while it might, perhaps, lay the ground for an indebitatus assumpsit in their own name against Wetherill, could not authorize the suit by the Equitable Society itself for an indebtedness that never existed.

For the reasons given, we think the nonsuit was properly granted, and the judgment below is therefore affirmed.